UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| KANDICE W., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 1:24-cv-00167 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Kandice W.[1] brought this action for judicial review of the denial of her application for disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration.[2] The Administrative Law Judge (ALJ) who addressed Ms. W.'s application determined she did not qualify as disabled.[3] Ms. W. argues the ALJ erred in the residual functional capacity determination by (1) failing to consider her hearing testimony and (2) assessing her mental limitations without crediting medical opinion evidence.[4] But the record shows the ALJ adequately considered Ms. W.'s testimony under the applicable legal standards, and substantial

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the court refers to the plaintiff by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 20–29, Doc. No. 10.)

[4] (Opening Br. 7, Doc. No. 12.)

evidence supports the ALJ's mental residual functional capacity determination. Accordingly, the Commissioner's decision is affirmed.[5]

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision.  This court reviews the ALJ's decision to determine whether substantial evidence supports her factual findings and whether she applied the correct legal standards.[6]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 9.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation modified).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11] And the court may not reweigh the evidence nor substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[14] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

    5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16] And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. W. applied for disability insurance benefits and supplemental security income in January 2022.[18] After an administrative hearing,[19] the ALJ issued a decision, finding Ms. W. not disabled and denying benefits.[20]

At step two of the sequential evaluation, the ALJ found Ms. W. had the severe impairments of "right eye retinopathy—status post vitrectomy; diabetic retinopathy—bilateral; right eye cataract; diabetes type 1—insulin dependent; anxiety disorder; depressive disorder; and post-traumatic stress disorder ('PTSD')."[21] The ALJ also determined Ms. W. had nonsevere impairments of "thyroid nodules, thoracic spine

---

[15] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 20, 261–275.)

[19] (Tr. 36–81.)

[20] (Tr. 20–29.)

[21] (Tr. 23.)

scoliosis (mild), right trigger finger, and headaches."[22] At step three, the ALJ concluded these impairments did not meet or medically equal an impairment listing.[23]

The ALJ then found Ms. W. had the residual functional capacity to perform "medium work" with certain limitations:

> The claimant can never climb ladders, ropes, and scaffolds; and she can never work at unprotected heights or around dangerous moving machinery. She cannot operate commercial vehicles. She can avoid ordinary hazards in a workplace, such as doors ajar and boxes on the floor. She is not able to work with small objects, such as nuts and bolts. The claimant can understand, remember, and carry out simple, routine instructions and use judgment to make simple work-related decision. She can have occasional interaction with the public. [24]

At step four, after considering the testimony of a vocational expert, the ALJ concluded Ms. W. could not perform past work.[25] But at step five, based on the expert's testimony, the ALJ found Ms. W. could perform other jobs in the national economy, including scrap sorter, industrial cleaner, and "laundry worker II."[26] Accordingly, the ALJ found Ms. W. not disabled and denied her claims.[27]

---

[22] (*Id.*)

[23] (Tr. 23–24.)

[24] (Tr. 25.)

[25] (Tr. 27.)

[26] (Tr. 28–29.)

[27] (Tr. 29.)

The Appeals Council denied Ms. W.'s request for review,[28] making the ALJ's decision final for purposes of judicial review.

## ANALYSIS

Ms. W. raises two claims of error, both related to the ALJ's residual functional capacity determination. First, she argues the ALJ failed to consider and evaluate her hearing testimony in assessing the consistency of her self-reported symptoms with other record evidence.[29] Second, she argues the ALJ erred by rejecting all medical opinions relating to her mental limitations when determining her residual functional capacity.[30]

A claimant's residual functional capacity (RFC) reflects the most she can do in a work setting considering her limitations.[31] In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[32]

---

[28] (Tr. 4–6.)

[29] (Opening Br. 9–15, Doc. No. 12.)

[30] (*Id.* at 16–19.)

[31] *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[32] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

The ALJ considers all relevant evidence in the record.[33] As explained below, Ms. W. has demonstrated no error in the ALJ's RFC determination.

  A. <u>Hearing Testimony</u>

    1. *Applicable Law*

The governing regulations and agency guidance require ALJs to evaluate a claimant's self-reported symptoms using a two-step process. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[34] Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."[35] In doing so, the ALJ "examine[s] the entire case record."[36] The ALJ considers factors such as: the claimant's daily activities; the duration, frequency, and intensity of symptoms; medication taken and whether it alleviates the symptoms; and other treatment or measures used to relieve the symptoms.[37] The ALJ also considers any inconsistencies between the claimant's

---

[33] *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

[34] SSR 16-3p, 2016 SSR LEXIS 4, at *3 (Mar. 16, 2016); *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b).

[35] SSR 16-3p, 2016 SSR LEXIS 4, at *4; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[36] SSR 16-3p, 2016 SSR LEXIS 4, at *9–10; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[37] SSR 16-3p, 2016 SSR LEXIS 4, at *18–19; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

statements and the rest of the evidence, including the claimant's history, medical signs and laboratory findings, and statements by medical sources and others.[38]

Ms. W. also relies on the Tenth Circuit's three-step framework for considering a claimant's subjective complaints of pain set out in *Luna v. Bowen*.[39] Under this framework,

> an ALJ faced with a claim of disabling pain is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.[40]

Factors the ALJ should consider in making this determination, known as the *Luna* factors, include

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.[41]

---

[38] 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

[39] 834 F.2d 161 (10th Cir. 1987).

[40] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163–64).

[41] *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (citing *Luna*, 834 F.2d at 165–66).

An ALJ "need not make a formalistic factor-by-factor recitation of the evidence," so long as she sets forth the specific evidence she relies on in evaluating the claimant's subjective symptoms.[42]

### 2. ALJ Decision

Here, the ALJ applied the two-step process from the governing regulations and Social Security Ruling 16-3p in evaluating Ms. W.'s self-reported symptoms and limitations.[43] Under the first step, the ALJ noted Ms. W. alleged impairments of "diabetes, diabetic retinopathy, PTSD, and bipolar disorder."[44] The ALJ summarized Ms. W.'s self-reported symptoms and limitations as follows: "She has stated that these impairments cause blurry vision, eye floaters, loss of vision in the right eye, anxiety, depression, tearfulness, and paranoia. In terms of functional limitations, the claimant alleges difficulty talking, seeing, completing tasks, concentrating, understanding, following instructions, and sleeping."[45] In this portion of her decision, the ALJ cited two function reports and a vision questionnaire completed by Ms. W.,[46] but did not

---

[42] *Keyes-Zachary*, 695 F.3d at 1167 (internal quotation marks omitted).

[43] (*See* Tr. 25 (describing the two-step process).)

[44] (*Id.*)

[45] (*Id.*)

[46] (*Id.* (citing Tr. 353–65 (Function Report dated 09/07/2022, Exhibit B7E), Tr. 391–95 (Vision Questionnaire, Exhibit B11E), Tr. 396–408 (Function Report dated 12/30/2022, Exhibit 12E)).)

specifically cite her hearing testimony. The ALJ found Ms. W.'s medically determinable impairments could reasonably be expected to cause the alleged symptoms.[47]

But at the second step, the ALJ concluded Ms. W.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[48] First, the ALJ found Ms. W.'s statements inconsistent with objective medical evidence.[49] Summarizing her history of treatment for diabetic retinopathy, the ALJ noted Ms. W.'s "eyes took longer than usual to heal" from a November 2021 procedure but "eventually her blurred vision and pain resolved."[50] The ALJ also noted Ms. W. "continue[d] to receive intermittent intravitreal injections to decrease the risk of permanent irreversible blindness," but her "visual acuity continue[d] to decline."[51] Still, the ALJ concluded Ms. W.'s visual impairment was not as limiting as she alleged, and would not prevent all work activity. As the ALJ noted, 2023 treatment records showed "decreased visual acuity and some trace sclerosis in the left eye," but her "visual fields [were] intact, her corneas [were]

---

[47] (*Id.*)

[48] (Tr. 25–26.)

[49] (Tr. 26.)

[50] (*Id.*)

[51] (*Id.*)

clear and the lens in her right eye [was] clear."[52]  Accordingly, the ALJ found the RFC limitations consistent with Ms. W.'s condition.[53]

As to mental impairments, the ALJ observed the lack of "evidence of any specialized psychiatric care."[54]  The ALJ also noted a consultative examination "revealed a relatively normal mental status."[55]  While the examiner stated Ms. W. appeared "somewhat timid," she was "appropriately groomed and dressed, she was fully oriented, her memory was intact, her thought process was logical and goal-directed, and her intelligence was estimated to be low-average to average."[56]

Next, the ALJ found Ms. W.'s daily activities inconsistent with her self-reported symptoms and limitations.[57]  The ALJ noted Ms. W. cared for her husband who has rheumatoid arthritis, cared for animals on her farm, and cared for her personal hygiene independently (citing Ms. W.'s written reports).[58]  The ALJ also stated: "At the hearing, the claimant alleged more limitations to her activities of daily living than previously

---

[52] (*Id.*)

[53] (*Id.*)

[54] (*Id.*)

[55] (*Id.*)

[56] (*Id.* (citing Tr. 1520–26).)

[57] (*Id.*)

[58] (*Id.*)

stated. However, these allegations are not consistent with the objective medical evidence discussed above."[59]

### 3. Analysis

Ms. W. contends the ALJ failed to consider her hearing testimony regarding subjective symptoms or to evaluate its consistency with record evidence.[60] She asserts her testimony provided "much more detail and limitations than the function and disability reports relied on by the ALJ."[61] And she contends the ALJ erred by failing to evaluate her testimony under the *Luna* factors.[62]

Mr. W. has demonstrated no error in the ALJ's evaluation of her self-reported symptoms. First, it is not apparent the *Luna* factors apply. The *Luna* factors are used for evaluating a claimant's subjective complaints of pain. But Ms. W. did not testify about pain,[63] and in her briefing, she does not assert that she claimed to be disabled

---

[59] (*Id.*)

[60] (Opening Br. 9–15, Doc. No. 12.) Ms. W. describes this as a "credibility" evaluation. (*See* Opening Br. 12–15, Doc. No. 12; Reply Br. 1–3, Doc. No. 19.) In 2016, the agency revised its policies to eliminate the term "credibility" and to clarify that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 SSR LEXIS 4, at *1. Nevertheless, Ms. W. also references the applicable regulations and agency guidance for evaluating subjective symptoms. Accordingly, notwithstanding Ms. W.'s use of the term "credibility," she is essentially arguing the ALJ erroneously evaluated her subjective symptoms under the current standards.

[61] (Opening Br. 14, Doc. No. 12.)

[62] (*Id.* at 10–11.)

[63] (*See* Tr. 43–54, 57–69.)

due to pain.[64]  Where Ms. W. did not allege disabling pain, she has not shown the ALJ was required to analyze her testimony under the *Luna* factors.[65]

      The ALJ adequately considered Ms. W.'s testimony under the two-step framework set forth in agency regulations and Social Security Ruling 16-3p for evaluating subjective symptoms.[66]  As noted above, the ALJ initially cited only Ms. W.'s written records (function reports and a vision questionnaire) in describing her self-reported symptoms.[67]  But in evaluating whether Ms. W.'s self-reported symptoms were consistent with other evidence, the ALJ also expressly considered her testimony at the hearing, noting she "alleged more limitations to her activities of daily living than previously stated."[68]  The ALJ then found "these allegations [were] not consistent with

---

[64] Indeed, Ms. W.'s own summary of her hearing testimony does not mention any allegations of pain.  (*See* Opening Br. 13, Doc. No. 12.)

[65] In any event, many of the *Luna* factors overlap with the factors in the agency regulations.  *Compare Huston*, 838 F.2d at 1132 (listing *Luna* factors including "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence") *with* 20 C.F.R. §§ 404.1529(c)(2)–(3), 416.929(c)(2)–(3) (requiring ALJs to consider objective medical evidence and other factors including daily activities, the "type, dosage, effectiveness, and side effects of any medication," and other treatment used to relieve pain or other symptoms).  As discussed below, the ALJ adequately considered these factors.  Accordingly, even if the *Luna* framework applied, the ALJ's analysis satisfied it.

[66] *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2016 SSR LEXIS 4, at *3–4.

[67] (Tr. 25 (citing Tr. 353–65 (Function Report dated 09/07/2022, Exhibit B7E), Tr. 391–95 (Vision Questionnaire, Exhibit B11E), Tr. 396–408 (Function Report dated 12/30/2022, Exhibit 12E)).)

[68] (Tr. 26.)

the objective medical evidence discussed above."[69] In other words, the ALJ considered Ms. W.'s symptom and limitation testimony and evaluated its consistency with other evidence, as required. And in the preceding discussion, the ALJ addressed factors relevant to the evaluation of subjective symptoms—including the treatment Ms. W. had received for her diabetic retinopathy, the absence of any specialized psychiatric care, and the results of her consultative examination.[70]

In sum, the ALJ applied the correct legal standards and adequately considered Ms. W.'s testimony in evaluating her self-reported symptoms. And Ms. W. has demonstrated no error in this evaluation.

B. Medical Opinion Evidence

Ms. W. next argues the ALJ erred in her RFC determination by rejecting all medical opinions regarding Ms. W.'s mental limitations.[71] According to Ms. W., this resulted in an RFC lacking medical support for the assessed mental limitations.[72] These arguments fail.

The ALJ considered medical opinions from a treating nurse practitioner and prior administrative medical findings from state agency consultants.[73] The ALJ found the opinions of the state psychological consultants (regarding mental limitations)

---

[69] (*Id.*)

[70] (*Id.*)

[71] (Opening Br. 16–19, Doc. No. 12.)

[72] (*Id.*)

[73] (Tr. 26–27.)

unpersuasive, and all other opinions (regarding physical limitations) partially persuasive.[74] The ALJ noted the state psychological consultants found Ms. W.'s mental impairments nonsevere and assigned only "mild limitations" in the four areas of mental functioning known as the "paragraph B" criteria.[75] The ALJ found this opinion unpersuasive because it was "not consistent with the medical evidence of record as described" in the decision.[76] Instead, the ALJ determined Ms. W.'s anxiety disorder, depressive disorder, and PTSD were severe impairments at step two.[77] And the ALJ assessed mild-to-moderate limitations in the paragraph B criteria at step three.[78] The ALJ also included restrictions relating to mental impairments in the RFC, limiting Ms. W. to "simple, routine instructions," "simple work-related decision[s]," and "occasional interaction with the public."[79]

The ALJ did not err in declining to credit the medical opinion evidence regarding Ms. W.'s mental limitations. In assessing RFCs, ALJs must consider the persuasiveness of medical opinion evidence, including explaining how they consider the

---

[74] (*Id.*)

[75] (Tr. 26); *see also* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00E.

[76] (Tr. 26.)

[77] (Tr. 23.)

[78] (Tr. 23–24.) Specifically, the ALJ found Ms. W. mildly limited in the areas of understanding, remembering, and applying information and adapting and managing oneself, and moderately limited in the areas of interacting with others and concentrating, persisting, and maintaining pace. (Tr. 24.)

[79] (Tr. 25.)

supportability and consistency of opinion evidence.[80]  But "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[81]  "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."[82]  This is because "[t]he determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities."[83]

In the absence of persuasive medical opinion evidence regarding Ms. W.'s mental limitations, the ALJ properly assessed Ms. W.'s mental RFC based on other evidence in the record.  The ALJ noted the lack of any record of specialized psychiatric care, and a consultative examination revealed a "relatively normal mental status."[84]  Although the consultative examiner observed Ms. W. to be timid and unsure of herself, she was appropriately groomed and dressed, fully oriented, her memory was intact, her thought process was logical and goal-directed, and her intelligence was estimated to be

---

[80] 20 C.F.R. §§ 404.1520c, 416.920c.

[81] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012); *see also Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 628 (10th Cir. 2020) (unpublished) (stating the same proposition); *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016) (unpublished) (same).

[82] *Chapo*, 682 F.3d at 1288 (alteration in original) (citation omitted).

[83] *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[84] (Tr. 26.)

low-average to average.[85]  The ALJ also considered Ms. W.'s daily activities, which included caring for her husband (including keeping his medications in order), caring for animals on their farm, and performing household chores.[86]  In assessing moderate limitations in interacting with others at step three, the ALJ acknowledged Ms. W.'s allegations of "anxiety, panic, and agoraphobia" and the fact that she did not "interact much outside the home."[87]  Considered in full, this evidence constitutes more than a "mere scintilla."[88]  It supports the ALJ's mental RFC findings—including limiting Ms. W. to simple instructions and decisions, and occasional interaction with the public.[89]  In other words, substantial evidence supports the mental RFC determination, notwithstanding the absence of persuasive medical opinions.

Accordingly, the ALJ did not err by determining Ms. W.'s mental RFC without crediting medical opinion evidence.

---

[85] (*Id.* (citing Tr. 1520–26).)

[86] (Tr. 24, 26.)

[87] (Tr. 24.)

[88] *Biestek*, 587 U.S. at 103.

[89] (Tr. 25.)

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 25th day of September, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge